IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL ROLON, *et al.*, | : | |
|     Plaintiffs, | : | |
| | : | |
| v. | : | Civil No. 5:21-cv-01856-JMG |
| | : | |
| METROPOLITAN LIFE INSURANCE | : | |
| COMPANY, | : | |
|     Defendant. | : | |

**MEMORANDUM OPINION**

**GALLAGHER, J.**                                                                                     **January 4, 2022**

**I.      OVERVIEW**

Plaintiffs argue that Defendant paid Plaintiffs' mother's life insurance benefit to the wrong person as a result of bureaucratic blundering and intransigence. Defendant argues that it never received the precise paperwork it needed to distribute the policy's benefits to Plaintiffs.

Defendant has moved for summary judgment. For the reasons that follow, the Court denies Defendant's motion.

**II.     FACTUAL BACKGROUND**

    **a.      The FEGLI Program**

This case arises out of a dispute over a life insurance policy taken out under the Federal Employees Group Life Insurance ("FEGLI") program. Some background on the program's scheme is necessary to understand the facts of this case.

The FEGLI program makes group life insurance policies available to certain employees of the federal government. Congress created the program through the Federal Employee Group Life Insurance Act of 1954 ("FEGLIA") and tasked the Office of Personnel Management

("OPM") with its implementation. 5 U.S.C. § 8716. To implement the program, the OPM enters contracts ("FEGLI Contracts") with insurance companies like Defendant. 5 U.S.C. § 8709. These contracting insurance companies are responsible for administering insurance claims brought under the FEGLI Program in accordance with the requirements and conditions of FEGLIA, the OPM's regulations and the FEGLI Contract.

FEGLIA prescribes an order of precedence that determines whom should receive an insured employee's life insurance benefit payment. 5 U.S.C. § 8705(a). The first person entitled to payment is the person whom the employee designates. *Id.* If that designated beneficiary predeceases the insured employee, then the order of precedence instructs that the benefit payment should go to the employee's spouse. *Id.* If the employee's spouse has also predeceased the employee, then the benefit should be paid to the employee's children. *Id.*

Neither FEGLIA, the OPM's regulations, nor the FEGLI Contract address whether a beneficiary may disclaim its entitlement to benefits, but the OPM has permitted beneficiaries to do so in practice. The OPM's website instructs beneficiaries that, to disclaim benefits, a beneficiary must advise the insurance company administering the FEGLI Contract "in writing" that the beneficiary "does not want the money he/she is entitled to receive." Def.'s Statement of Undisputed Facts ("DSUF") ¶ 7, ECF No. 14-2; Pl.'s Statement of Disputed Facts ("PSDF") ¶ 7, ECF No. 16-9. When a beneficiary disclaims its right to benefits, the insurance company treats the beneficiary as though it predeceased the employee and pays the benefits to the next person in the order of precedence. *Id.*

Similarly, neither FEGLIA, the OPM's regulations, nor the FEGLI Contract addresses a beneficiary's right to assign benefit payments to another person, though the existence of a statutory order of precedence suggests such a right should be limited or nonexistent. But, as a

matter of practice, the OPM has permitted beneficiaries to assign a portion of their benefits to the funeral home that conducts funeral services for the deceased employee. DSUF § 8; PSDF § 8.

With this background, the Court turns to the facts of this case.

### b.     Allegations

Plaintiffs' mother, Kimberly Cardona, registered for a life insurance policy through the FEGLI program. DSUF ¶ 1; PSDF ¶ 1. Under her policy, Ms. Cardona named her then fiancé and now estranged husband Ernesto Cardona as the policy's beneficiary. Claim File at 2, ECF No. 17-3. As a result, Mr. Cardona became entitled to receive the proceeds of her life insurance policy when Ms. Cardona passed away. DSUF ¶ 9; PSDF ¶ 9.

When Mr. Cardona learned of Ms. Cardona's death, he executed and notarized a document attempting to assign all the proceeds of Ms. Cardona's life insurance policy to the funeral home that was conducting her funeral services and to one of Ms. Cardona's surviving children, Plaintiff Jessica Bailey (the "Assignment Letter"). DSUF ¶¶ 10–11; PSDF ¶¶ 10–11. Specifically, the document stated that Mr. Cardona wanted to "assign all policy rights and proceeds . . . not to exceed $8,055.03" to the funeral home and "[a]ny remaining proceeds" to "Kimberly Cardona's daughter, Jessica L. Bailey." Claim File at 18. This document was delivered to Defendant, with whom the OPM had contracted to administer life insurance claims under the FEGLI program. DSUF ¶¶ 3, 10; PSDF ¶¶ 3, 10.

Plaintiffs argue that, through this Assignment Letter, Mr. Cardona disclaimed any entitlement to the policy's benefits and left them to Plaintiffs. PDSF ¶ 12. But Defendant argues that this Assignment Letter was inadequate to effect a disclaimer and that Mr. Cardona needed to execute a different form to disclaim his entitlement to the policy's proceeds. DSUF ¶ 12. Over the next two months, the parties, Mr. Cardona and the funeral home director exchanged

numerous phone calls, emails, faxes and notarized documents to determine whether Mr. Cardona intended to disclaim his entitlement to the policy's benefits. *See, e.g.*, Claim File.

This series of communications left Defendant with multiple indications that Mr. Cardona intended to disclaim his entitlement to the benefits of Ms. Cardona's life insurance policy. Defendant had Mr. Cardona's initial notarized letter, in which he had sought to assign all the policy's benefits to the funeral home and to Plaintiff Bailey. Claim File at 18. Defendant's representatives also spoke to Mr. Cardona over the phone and obtained his verbal confirmation that he intended to disclaim benefits. Claim File at 91, 103. The director of the funeral home that had conducted Ms. Cardona's funeral services allegedly participated in one of these phone conversations to mediate what she perceived to be a "language barrier" between Defendant's representatives and Mr. Cardona. Decl. Elizabeth Candelori ¶¶ 28–31, ECF No. 16-1.

But this series of communications also left Defendant with multiple indications that Mr. Cardona *had not* intended to disclaim his entitlement to benefits. These indications included a notarized letter from Mr. Cardona stating that he wanted to claim the benefits after all and that his initial Assignment Letter had been forged. Claim File at 35. These indications also included phone calls in which Mr. Cardona allegedly stated that he no longer wished to disclaim his benefits. Claim File at 98, 108, 109, 115.

With all this information in hand, Defendant decided to pay $8,005.03 of the policy's benefit to the funeral home and the balance to Mr. Cardona. DSUF ¶ 16.

    **c.**    **Procedural History**

Plaintiffs filed a Complaint claiming that Defendant had breached Ms. Cardona's insurance policy by paying Ms. Cardona's life insurance benefits to Mr. Cardona. *See* ECF No. 1. Plaintiffs demanded a jury trial. *Id.* Defendant filed an Answer denying liability and

asserting a variety of affirmative defenses. *See* ECF No. 6. After the close of discovery, Defendant moved for summary judgment. *See* ECF No. 14. Defendant's motion is presently before the Court.

### III. LEGAL STANDARD

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is "genuine" when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Physicians Healthsource, Inc. v. Cephalon, Inc.*, 954 F.3d 615, 618 (3d Cir. 2020). And a fact is material if "it might affect the outcome of the suit under governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party moving for summary judgment must "identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). In response, the nonmoving party must then "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 192 (3d Cir. 2015) (quoting *Anderson*, 477 U.S. at 252).

In applying this standard, the court must "construe the evidence in the light most favorable to the non-moving party." *Anderson*, 477 U.S. at 255. At the summary judgment stage, the court's role is not to weigh the evidence and determine the ultimate truth of the allegations.

*Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019). Instead, the court's task is to determine whether there remains a genuine issue of fact for trial. *Id.*

## IV. ANALYSIS

Defendant argues it is entitled to summary judgment for two independent reasons. First, Defendant argues that Plaintiffs' breach of contract claim is preempted and precluded by FEGLIA. Second, Defendant argues it adequately fulfilled its duty under the FEGLI Contract to administer Ms. Cardona's life insurance policy. The Court will address each argument in turn.

### a. Preemption

Defendant argues FEGLIA preempts Plaintiffs' breach of contract claim in two ways. First, Defendant argues FEGLIA expressly preempts Plaintiffs' claim. Second, Defendant argues FEGLIA impliedly preempts Plaintiffs' breach of contract claim because the statute irreconcilably conflicts with state law causes of action for breach of contract. But neither of these arguments is persuasive because Plaintiffs' breach of contract claim is entirely consistent with the FEGLI Contract and FEGLIA itself.

In determining whether a federal statute expressly preempts state law, a court must focus exclusively on the federal statute's text. *Puerto Rico v. Franklin California Tax-Free Tr.*, 579 U.S. 115, 125 (2016) ("[W]e do not invoke any presumption against pre-emption but instead focus on the plain wording of the clause, which necessarily contains the best evidence of Congress' pre-emptive intent.") (internal quotation marks omitted). FEGLIA contains only one express preemption provision: § 8709(d)(1). This subsection provides that "provisions of any [FEGLI] contract" will preempt state law when the contract provision "relate[s] to the nature or extent of coverage," the state law "relates to group life insurance," and the state law and the contract provision are "inconsistent" with each other. 5 U.S.C. § 8709(d)(1). Accordingly, the

scope of FEGLIA's express preemption provision is extremely narrow. *Herrera v. Metro. Life Ins. Co.*, No. 11 CIV. 1901, 2011 WL 6415058, at *4 (S.D.N.Y. Dec. 19, 2011). The provision expressly preempts only certain creatures of state law insofar as they *conflict* with certain terms of the FEGLI Contract.

Defendant's express preemption argument must fail because there is no inconsistency between state law causes of action for breach of contract and the FEGLI Contract's terms. Indeed, the whole purpose of a breach of contract claim is to *enforce* a contract's provisions, not to alter them. The FEGLI contract does not contain any clause precluding judicial review or compelling non-judicial enforcement—in fact, the FEGLI contract seems to contemplate judicial enforcement. *See* FEGLI Contract § 1.17, ECF No. 17-1 ("In any *action at law or in equity* that relates to the FEGLI Program, the claimant will be limited in the amount of recovery to the benefit that would be payable under the FEGLI Program.") (emphasis added).

Defendant argues that breach of contract principles are inconsistent with the FEGLI Contract's provisions that Defendant's benefit determinations shall stand unless "arbitrary and capricious" and that the Defendant shall make these determinations using beneficiary designations supplied by the OPM. *See* Def.'s Br. at 12–13; FEGLI Contract §§ 2.6(a), 2.12(a). But no principle of breach of contract analysis would require the Court to set aside these contract provisions. These provisions define the scope and standard of performance expected under the contract. In reviewing a breach of contract claim based on the FEGLI Contract, a court would necessarily have to evaluate Defendant's performance against these very standards.

Defendant's implied conflict preemption argument fails for similar reasons. Under the principles of implied conflict preemption, a state law is preempted when it conflicts with a federal law such that dual compliance is impossible or when it stands as an obstacle to the

federal statute's objective. *Hillman v. Maretta*, 569 U.S. 483, 490 (2013). But state law causes of action for breach of contract are entirely consistent with FEGLIA. No provision of FEGLIA precludes judicial review of insurers' benefits determinations. And, unlike the Employee Retirement Income Security Act, FEGLIA does not supply its own cause of action that could displace state law causes of action. *Cf. Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). Indeed, without state law causes of action for breach of contract, there would be *no* cause of action available to beneficiaries.[1] Since one purpose of FEGLIA's statutory design is to ensure that beneficiaries receive the insurance proceeds to which they are entitled under the FEGLI Contract, *Hillman*, 569 U.S. at 494, it would be entirely consistent to allow beneficiaries to bring state law causes of action for breach of contract to enforce that contract.[2]

---

[1] Alternatively, it is possible that the absence of a cause of action in FEGLIA suggests that Congress intended for FEGLIA Contracts to be enforced via the federal common law cause of action for breach of contract. *See Herrera*, 2011 WL 6415058, at *5. Since FEGLIA expressly designates individuals like Plaintiffs as potential beneficiaries of the FEGLI Contract, 5 U.S.C. § 8705(a), and has the purpose of ensuring that beneficiaries like Plaintiff receive the benefits to which they are entitled, *Hillman*, 569 U.S. at 494, Plaintiffs could be proper third-party beneficiaries of the FEGLI Contract to bring such an action. *See Astra USA, Inc. v. Santa Clara Cty., Cal.*, 563 U.S. 110, 117 (2011). If that were the case, Defendant's preemption arguments would be entirely irrelevant. But the Court need not reach this holding because it has found that FEGLIA does not preempt state law causes of action for breach of contract.

[2] Defendant's preemption argument relies heavily on *O'Neal v. Gonzalez*, 839 F.2d 1437 (11th Cir. 1988), which held that FEGLIA preempted a plaintiff's state law breach of contract action. 839 F.2d at 1440. But *O'Neal* has nothing in common with this case. In *O'Neal*, a federal employee had promised the plaintiff that the employee would name the plaintiff as the beneficiary of the employee's FEGLI policy. *Id.* at 1438. After the employee died, the plaintiff discovered that the employee had not fulfilled his promise, and the plaintiff sued the named beneficiary in an attempt to recover the policy's proceeds. *Id.* at 1438–39. The plaintiff alleged that the named beneficiary's receipt of the policy's benefits breached the *plaintiff's contract with the employee* and sought a constructive trust as a remedy. *Id.* at 1439. The court concluded that FEGLIA preempted this action because enforcement of the breached contract would redirect FEGLI policy benefits from the named beneficiary to someone else and that such a redirection would directly contravene FEGLIA's order of precedence. *Id.* at 1440. *O'Neal* has no bearing on this case because, here, Plaintiffs are using their breach of contract action to *enforce* FEGLIA's order of precedence—not to subvert it.

### b. Adequacy of Defendant's Performance

The FEGLI Contract provides that Defendant's "determination as to entitlement to payment of Benefits is to be given full force and effect, unless it can be shown that the determination was arbitrary and capricious." FEGLI Contract § 2.6(a). Defendant argues that it is entitled to summary judgment because it did not act arbitrarily and capriciously in paying Ms. Cardona's policy benefits to Mr. Cardona. But a reasonable jury could conclude otherwise, so summary judgment would be inappropriate.

Fundamentally, this dispute centers on whether Defendant acted arbitrarily and capriciously by refusing to construe Mr. Cardona's Assignment Letter as a disclaimer of entitlement to benefits. Neither FEGLIA, the OPM's regulations, nor the FEGLI Contract addresses how a beneficiary must (or even can) disclaim his entitlement to benefits. But the OPM website informs beneficiaries that they may disclaim their entitlement to benefits by informing Defendant "in writing" that the beneficiary "does not want the money that he/she is entitled to receive." DSUF § 7; PSDF § 7. Mr. Cardona did submit a writing to Defendant in the form of his Assignment Letter, and this writing did inform Defendant that Mr. Cardona did not want any of the money to which he was entitled. Mr. Cardona then spoke with Defendant's representatives on the phone on at least two occasions to verbally confirm that he intended to disclaim his entitlement to benefits.

A reasonable jury could rely on these facts to conclude that Defendant should have construed Mr. Cardona's Assignment Letter as a disclaimer and should have distributed the proceeds of Ms. Cardona's policy to Plaintiffs as the next beneficiaries in FEGLIA's order of precedence. And a reasonable jury could conclude that, under these circumstances, Defendant's refusal to do so and Defendant's insistence that Mr. Cardona submit *another* writing to confirm

his intent to disclaim were arbitrary and capricious. Accordingly, summary judgment would be inappropriate.

## V.    CONCLUSION

Plaintiffs' breach of contract claim is not preempted by FEGLIA or the regulations or contract promulgated under it. And a reasonable jury could conclude that Defendant's determination of Plaintiffs' entitlement to benefits was arbitrary and capricious and, therefore, in breach of the FEGLI Contract. Accordingly, the Court denies Defendant's motion for summary judgment.

BY THE COURT:

*/s/ John M. Gallagher*
JOHN M. GALLAGHER
United States District Court Judge